**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF NORTH CAROLINA**
**DURHAM DIVISION**

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | |
| **Charles Christopher Garner and** | ) | **Case No. 09-81998** |
| **Debbie Hussey Garner,** | ) | |
| | ) | |
| **Debtors.** | ) | |

**MEMORANDUM OPINION**
**AND ORDER**

This matter comes before the Court on the Motion for Sanctions against RSY Corporation

dba Rick's Auto Marketing Center for violation of the automatic stay filed by Charles

Christopher Garner and Debbie Hussey Garner (the "Debtors").  Sara Harrington appeared on

behalf of the Debtors, Craig Haskell appeared on behalf of RSY Corporation dba Rick's Auto

Marketing Center, and Benjamin Lovell appeared on behalf of the Chapter 13 Trustee.  The

Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding

pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).  After considering the evidence on record and the

arguments of counsel, this Court makes the following findings of fact and conclusions of law

pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure:

**FINDINGS OF FACTS**

On February 5, 2009, Mr. Garner, the male debtor in this proceeding and RSY

Corporation dba Rick's Auto Marketing Center ("RSY"), entered into a retail installment

contract (the "Contract") to purchase a 1997 Dodge Ram 350 (the "Vehicle"), financing the sum

of $5,150.00 at 14% interest, with 35 bi-weekly payments in the amount of $162.79.  At the time

of the sale, RSY installed an "On Time Payment Protection System" (the "Payment Protection

1

System" or the "System") in the Vehicle. The Payment Protection System allows RSY to enforce timely payments by preventing the Vehicle from starting absent the entry of a numeric code which expires periodically. Prior to the bankruptcy filing, each time Mr. Garner made a bi-weekly payment, RSY issued a new code so that Mr. Garner could continue to use the Vehicle without interruption. If Mr. Garner failed to enter a valid code, the System would render the Vehicle inoperable. The System provides a three-day grace period during which time it emits a warning signal, a blinking red light and a beeping sound, placing the driver on notice that a new code must be entered.

On November 9, 2009, the Debtors filed a petition for relief under Chapter 13 of the Bankruptcy Code. The Debtors listed RSY as a secured creditor on Schedule D and on the creditor matrix. Simultaneously, the Debtors proposed a Chapter 13 plan which authorized the Trustee to garnish their wages in order to remit payments to RSY. The proposed plan included RSY as a secured creditor and provided for the claim to be paid in full at *Till* interest with pre-confirmation adequate protection payments in accordance with 11 U.S.C. § 1326(a)(1). The Debtors' attorney served notice of the plan on RSY on November 9, 2009, at 4937 Highway 15-501, Carthage, NC 28327. On November 11, 2009, the Bankruptcy Noticing Center sent the "Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors, & Deadlines" as well as a proof of claim form to RSY at this same address. Also on November 11, 2009, the Debtors' attorney wrote RSY, enclosed documentation verifying the filing of the Debtors' bankruptcy petition, and demanded that RSY make arrangements to remove the System immediately.

Two days after the bankruptcy filing, on November 13, 2009, a bi-weekly payment was due to RSY. On that day, Mr. Garner attempted to call the manager of RSY, Mr. Richard Yow

("Mr. Yow"), to express his concerns about the operational status of the Vehicle.  Mr. Yow was

unavailable on November 13, 2009, but an agent of the RSY provided Mr. Garner with a code to

temporarily maintain the operational use of the Vehicle and instructed Mr. Garner to call back at

a later time to speak with Mr. Yow directly.  Absent the entry of a new code,  the System was

scheduled to disable his Vehicle two weeks later, following the three-day grace period, on

November 30, 2009.  On November 18, 2009, Mr. Garner again contacted RSY by telephone.

During this phone call, Mr. Garner spoke with Mr. Yow directly and requested that RSY remove

the Payment Protection System from the Vehicle.  Mr. Yow refused removal of the System and

requested documentation of the bankruptcy filing.  In response to this conversation, Mr. Garner

contacted Debtors' counsel, and counsel attempted to fax a notice to RSY on November 18,

2009, demanding that the System immediately be removed.  RSY did not receive this fax as

Debtors' counsel inadvertently used an incorrect fax number.

On November 24, 2009, the Debtors filed this Motion for Sanctions for Violation of the

Automatic Stay against RSY.  Debtors' counsel also contacted RSY multiple times by telephone

and email before RSY agreed to the removal of the Payment Protection System on November 30,

2009.  The Payment Protection System was not actually removed from the Vehicle until

Wednesday, December 2, 2009.

Mr. Yow contends that he never received: (1) the initial mailing from the Bankruptcy

Court, (2) the initial mailing from the Debtors' attorney, or (3) the correspondence from the

Debtors' attorney demanding that the devise be removed.  At the hearing on the motion, Mr.

Yow testified that he had no knowledge of the bankruptcy filing until the receipt of a faxed proof

of claim form on November 25, 2009.  Prior to this date, RSY was repeatedly served at its

correct address at 4937 Highway 15-501, Carthage, NC 28327 and none of the correspondence was returned to the sender undelivered. Absent strong evidence to the contrary, the court must presume that RSY received the documents mailed to it. *See Bosiger v. U.S.Airways*, 510 F.3d 442, 452 (4th Cir. 2007). RSY produced no such evidence. Furthermore, the court notes that Mr. Garner contacted RSY by telephone on two occasions prior to November 24, 2009. Accordingly, the Debtors have established that RSY received adequate and timely notice of the bankruptcy filing and the Debtors' request that the Payment Protection System be removed.

## ISSUE

The issue in this case is whether the failure to remove the Payment Protection System from the Vehicle, after a demand is made by Debtors' counsel, constitutes a violation of the automatic stay.

## DISCUSSION

Upon a debtor's filing of a bankruptcy petition, the automatic stay provided by 11 U.S.C. § 362(a) operates to stay, among other things, all actions "to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under the title." 11 U.S.C. § 362(a)(6). The automatic stay also prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). The automatic stay is a bedrock principle upon which the Code is built; the importance of § 362 cannot be over-emphasized. *Grady v. A.H. Robins Co.,* 839 F.2d 198, 200 (4th Cir. 1988). "The purpose of the automatic stay, in addition to protecting the relative position of creditors, is to shield the debtor from financial pressure during the pendency of the bankruptcy proceeding." *Winters By and Through McMahon v. George Mason Bank*, 94 F.3d 130, 133 (4th

Cir. 1996) (citation omitted).  The automatic stay provides the debtor a breathing spell from creditors, affording the debtor time to reorganize. *Grady v. A.H. Robins Co.,* 839 F.2d at 200 (quoting House Report No. 95-595, 95th Cong. 1st Sess. 340-1 (1977)).  Thus, the purpose of the automatic stay is two-fold: to preserve the relative positions and rights of creditors as established by the Bankruptcy Code and to protect the debtor, individually, from collection activities.

The scope of § 362(a) is broad and encompasses a vast range of creditor activity such as sending statements with payment coupons, improperly applying trustee payments, attempting to collect disallowed fees from a debtor via payoff letter, and assessing and collecting post-petition fees without notice to a debtor. *See*, *e.g.*, *In re Cousins,* 404 B.R. 281, 289 (Bankr. S.D. Ohio 2009) (sending the debtor monthly statements with payment coupon violates § 362(a)(6)); *In re Sanchez*, 372 B.R. 289, 313 (Bankr. S.D.Tex. 2007) (applying payments that mortgage lender received from trustee to undisclosed charges is an exercise of control of property of the estate in violation of § 362(a)(3)); *In re McCromack,* 203 B.R. 521, 525-26 (Bankr. D.N.H. 1996) (including a disallowed attorney's fee obligation in escrow account balance violates the stay); *In re Stark*, 242 B.R. 866, 872 (Bankr. W.D.N.C. 1999) (attempting to collect inspection or monitoring fees by adding the fees to monthly statements violated § 362(a)(3)).  A creditor is not only required to refrain from certain activity, but may be required to take affirmative action, such as discontinuing an automatic draft, to avoid violating § 362(a). *In re O'Neal*, 165 B.R. 859, 862 (Bankr. M.D.Tenn. 1994) (holding that a bank's automatic loan payment from a debtors' checking account authorized prepetition constitutes a violation of the stay under § 362(a)(6) absent the debtors' clear expression of voluntary consent post-petition). As § 362(a)(3) prohibits an act to "exercise control" over estate property, a creditor may violate the stay by failing to

5

return property that the creditor obtained prepetition.  *See*, *e.g.*, *In re Brown*, 237 B.R. 316, 320 (Bankr. E.D. Va. 1999) ("Following the majority approach, the debtors were entitled to recover the truck upon filing bankruptcy.")

In this case, the Debtors filed their bankruptcy petition on November 9, 2009, and RSY received notice of the Debtors' bankruptcy filing on repeated occasions beginning on that date. Accordingly, since November 9, 2009, RSY had an obligation to stay any acts to collect on its prepetition claim and to fully relinquish control over the property of the estate.  RSY did not remove the Payment Protection System until the Debtors filed this motion for sanctions, and in doing so, RSY violated the automatic stay.  *See In re Peterkin,* 2009 WL 1076816, No. 08-06060, slip op. at 2 (Bankr. E.D.N.C. 2009) (finding that, upon a bankruptcy filing, creditor should provide debtor with a system code to enable debtor to deliver the vehicle to creditor for removal of a disabling system, the cost of which should be borne by creditor).

On a most basic level, RSY installed the Payment Protection System on the Vehicle to control the Vehicle.  By refusing to promptly remove the Payment Protection System upon the Debtors' post-petition request, RSY exercised control over estate property in violation § 362(a)(3).  "Control, necessarily requires a creditor to exercise some authority or influence over the property in derogation of the estate."  *In re Harchar*, 393 B.R. 160, 170 (Bankr. N.D. Ohio 2008).  The determination as to whether control has been exercised over property of the estate must be based upon the particular facts of the case. *U.S. v. Harchar*, 371 B.R. 254, 263 (N.D.Ohio 2007).  Here, while Mr. Garner had the use of his vehicle on the petition date, he was required to contact RSY every two weeks in order to continue to use his vehicle post-petition; therefore, he requested that the Payment Protection System be removed.  RSY was Mr. Garner's

6

only source for the numeric codes necessary for the continuous use of the Vehicle. Without the entry of a valid code, the Vehicle would be completely disabled, clearly impairing the estate. The circumstances in this case can be likened to a situation in which a debtor was required to contact a creditor every two weeks to request that a vehicle *not* be repossessed. The court concludes that RSY had both authority and influence over the Vehicle such that it exercised control over property of the estate in violation of the automatic stay.

RSY's actions also violated § 362(a)(6) as actions to collect on a claim that arose prepetition. Prior to filing, Mr. Garner contacted RSY every other week to remit a payment and, in return, to obtain a new code for the Payment Protection System. By requiring him to continue to request a code every two weeks post-petition while his payments were being made by the Trustee through the Chapter 13 plan, RSY asserted coercive pressure for payment of a claim that arose prior to the petition date. Prepetition, the Payment Protection System served no purpose other than to assist in the collection of a debt by disabling the Vehicle in the event that RSY did not receive a payment every other week, thereby imposing continuous pressure on Mr. Garner to remain current on his payments to RSY. Similarly, the Payment Protection System served no purpose post-petition other than to pressure Mr. Garner to remit payment on his prepetition debt to RSY. *See In re Jessamey*, 330 B.R. 80, 85 (Bankr. D. Mass. 2005) ("Where a collection mechanism was set in motion before the bankruptcy filing, postpetition 'inaction' is more properly understood as an extension into the postpetition era of the collection campaign commenced prepetition."). The effect of requiring Mr. Garner to contact RSY every two weeks for a code is not unlike that of sending a debtor a monthly statement with a payment coupon when the debt is being paid inside a Chapter 13 plan. *See In re Cousins,* 404 B.R. at 288-89.

RSY's efforts to collect on its debt that arose prepetition and that is now being paid through the Chapter 13 plan jeopardizes the Debtors' efforts to reorganize and is contrary to the fundamental purposes of the automatic stay: to provide the debtor with a breathing spell from creditors and to preserve the relative rights of creditors as established by the Bankruptcy Code.

Section 362(k) provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k). A violation of a stay is "willful" under this section of the Bankruptcy Code if it is done intentionally and with knowledge of the bankruptcy filing. *Green Tree Servicing, LLC v. Taylor,* 369 B.R. 282, 286 (Bankr. S.D.W.Va. 2007); *In re Preston*, 333 B.R. 346, 349 (Bankr. M.D.N.C. 2005). An individual seeking damages has the burden of establishing by a preponderance of the evidence that (1) the action taken was in violation of the automatic stay, (2) the violation was willful, and (3) the violation caused actual damages.

RSY's refusal to remove the Payment Protection System constitutes an intentional, and therefore willful, violation of the automatic stay pursuant to § 362(k) of the Bankruptcy Code. As a result, the Debtors are entitled to be compensated for actual damages. The Debtors failed to present the Court with evidence of a specific amount of lost wages or expenses, such as cost of transportation. The only evidence available to the court is that of attorney's fees incurred in connection with this motion. As a result of the lack of evidence of actual damages, the Court finds that the Debtors are entitled to recover nominal damages in the amount of $10.00 for lost wages and $1,500.00 for attorney's fees pursuant to § 362(k)(1).

8

## <u>CONCLUSION</u>

Based upon the foregoing, the Debtors' Motion is granted.  RSY is hereby ORDERED to pay monetary damages in the amount of $10.00 to the Debtors and attorney's fees in the amount of $1,500.00 to the Debtors' attorney, Sara W. Harrington, within ten (10) days after the entry of this order.

# SERVICE LIST

Charles C. Garner
Debbie H. Garner
Debtors

Sara Harrington
Attorney for Debtors

RSY Corporation
dba Rick's Auto Marketing Center
Attn: Ricky Yow
4937 Highway 15-501
Carthage, NC 28327

Craig S. Haskell
Attorney for RSY Corp.
5540 Centerview Drive
Suite 416
Raleigh, NC 27606

Richard M. Hutson, II
Trustee

Michael D. West
U.S. Bankruptcy Administrator